JOHN D. WILLIAMS and others v. DAVID KIVETT.

*Practice—Parol Evidence—Boundary.*

1. This court will consider on appeal only such exceptions as were made on the trial.

2. In locating a grant where the description of the land is indefinite, parol testimony that "a pine stump ninety yards below a bridge on Little river" was the beginning of the first line and "an old marked corner" (though no natural object is called for at that point) was the end, is competent to be considered by the jury in fixing the *termini* of the first line and its correspondence with the course and distance called for in the deed.

3. Where the grant in such case described land as adjoining a river and beginning on the river bank, below a bridge on the river, and the court below excluded the above evidence, this court intimate upon the authority of *Becton* v. *Chesnut*, 4 Dev. & Bat., 335, that if the evidence had been properly ruled out, the legal effect of the descriptive words would be to fix the beginning at and immediately below the bridge.

(*Bridgers* v. *Bridgers*, 69 N. C., 451; *Addington* v. *Jones*, 7 Jones, 582; *Safret* v. *Hartman*, 5 Jones, 185; *Topping* v. *Sadler*, *Id.*, 357; *Mc-Donald* v. *McCaskil'*, 8 Jones, 158; *Becton* v. *Chesnut*, 4 Dev. & Bat., 335, cited and approved )

CIVIL ACTION to recover possession of Land, tried at Fall Term, 1879, of CUMBERLAND Superior Court, before *Seymour, J.*

The facts material to the points decided are set out in the opinion of this court. Verdict for defendant, judgment, appeal by plaintiffs.

*Messrs. N. W. Ray* and *B. Fuller*, for plaintiffs.
*Messrs. Guthrie & Carr*, for defendant.

SMITH, C. J. The plaintiffs' claim title to the land in dispute under a grant from the state to James Campbell for four hundred acres, issued on the 14th day of May, 1800, and thence by successive mesne conveyances to themselves. The land is described in the grant as "adjoining the river and James Campbell's survey, Alexander Campbell and Wm. Crawford's, beginning on Little river bank, below his bridge on said river, thence south 35° east 187 chains; thence south 55° west 52 chains; thence north 35° west 64 chains to a stake; thence with his own 300 acre survey north 55° east 42 chains to the third corner of said survey; thence with his other line north 35° west 77 chains to the corner of a 50 acre survey, patented by Walter Gibson, thence north 45° west 48 chains to a stake on Little river bank above his bridge; thence down the meanders of the river to the beginning."

WILLIAMS v. KIVETT.

Plaintiff's claim—400 acres granted to James Campbell—A, B, C, D, E,
        F, G down the river to A.
        "        "        300 acres granted to James Campbell—F, L, D, E, to F.
        "        "        50 acres granted to Walter Gibson—F, K, I, H, to F.
Defendant's claim—465 acres granted to David Kivett—1, 2, 3, 4, 5, 6, 7,
        8, 9, 10, 11, 12, 13 to 1.
        "        "        75 acres granted to Hugh McCormick—A, N, O, P
        up the river to A.

In order to locate the grant, the plaintiffs proposed to
show that a pine stump, ninety yards below Campbell's
bridge on the river bank, represented by A on the plat, was

the beginning of the boundary and had been pointed out as
such by old persons. The evidence was excluded on the
ground that the description of the corner in the grant was
too indefinite to admit of location by parol.

The plaintiffs further offered to show by similar testi-
mony, an old marked corner at B, the termination of the
first line, and was refused because there was no natural ob-
ject at that point called for in the grant, and to be identi-
fied as such.

The plaintiffs then insisted that upon a proper construc-
tion of the descriptive words of the grant, the beginning
was fixed at and immediately below the bridge and thence
the lines were to be run by course and distance until the
river was reached, and down it to the first station. The
court not concurring in this interpretation of the deed, re-
fused to instruct the jury that such was its legal effect.
Starting from either point and running according to its
calls, the land in dispute is within the plaintiffs' boundaries.

There were other exceptions to rulings made during the
trial which according to the view we have taken are not
necessary to be considered.

The beginning point is on Little river bank and below
the bridge which crosses it, and if capable of location must
be fixed by competent parol testimony as to its position, or
must be below and at the bridge itself. This evidence was
offered and rejected, not because of an inherent defect or
any objection to the source from which it comes, but for the
assigned reason that no evidence can aid the vagueness and
uncertainty of the descriptive words of the grant. Hence
it must be assumed that the witnesses were old persons, dis-
interested and now dead, and were competent to testify, if
the testimony itself was proper to be heard. No enquiry is
made as to their competency, and the exclusion of the evi-
dence rendered the enquiry wholly immaterial. The ques-
tion presented by the plaintiffs' exception is as to the cor-

8

rectness of the ruling of the court in refusing to receive any evidence of the true locality of the beginning of the boundary " on the river bank " and "below the bridge," and it cannot *here* be defended on the ground that it does not appear that the witnesses are dead and were not interested in the subject matter of the controversy. This rests upon the established rule that this court on appeal will only consider such exceptions as ought to have been made and were made in the court below. But the point is decided in *Bridgers* v. *Bridgers,* 69 N. C., 451. A witness, a justice of the peace, before whom a warrant has been tried, was asked if its subject matter was within his jurisdiction, and the objection was interposed that the evidence was secondary and the original should be produced. In delivering the opinion, READE, J., uses this language : " He (His Honor) certainly ought not to have rejected it (the evidence) if it was not objected to by the defendant. Nor ought he to have *rejected it although objected to by the defendant unless the objection was put upon proper ground.* This is based upon the well established practice to consider only such exceptions as are taken in the court below and are brought up by the appeal for revision.

The point then is as to the competency of any evidence to ascertain and fix the beginning of the boundary lines, and in our opinion the ruling of His Honor is erroneous.

" It is settled," says PEARSON, C. J., " that a line of marked trees, or a *tree marked as a corner* although not called for in the grant, or any natural object called for in the grant, which can be identified, and has sufficient certainty to furnish of itself a description in place of the course and distance set out in the grant, will be allowed the effect of contradicting the course and distance so as to make the line longer or shorter ; or even to locate the land north of the beginning instead of south of it." *Addington* v. *Jones,* 7 Jones, 582. And in *Safret* v. *Hartman,* 5 Jones, 185, it is held that testimony is receivable to fix a corner though not

called for in the grant, which was adopted and acted on in making the grant. To the same effect is *Topping* v. *Sadler*, *Ibid.*, 357. So an unmarked pine called for in the grant in the midst of a pine growth between objects, eight or ten miles apart, was allowed to be pointed out and identified. *McDonald* v. *McCaskill*, 8 Jones, 158.

These cases cited by the plaintiffs' counsel sustain the exception and show that the evidence tendered ought to have been submitted to the jury to assist them in finding the place where the survey commenced. The proposition was to show the *termini* of the first line, and its correspondence with the course and distance called for in the deed. But if the evidence had been properly ruled out, for the reason that it does not fit the description of the thing described, we are not prepared to say the plaintiffs were not entitled to the instruction as to the force and effect of the words of the deed. The construction derives support from the decision in *Becton* v. *Chestnut*, 4 Dev. and Bat., 335. In that case the land is described in the patent as "lying on Neuse river, and bounded as follows: Beginning at a hickory below the mouth of Beaver Dam branch and runs up the pocosin and branch north 71 west 45 poles; thence still along said branch and joining Keiths' land, north 15 west 98 poles," &c., "to a red oak by the river side; thence up the river to the beginning." In determing the legal import of these words RUFFIN, C. J., says: " We think it clear that the patent begins at K, or, in other words, on the river and *immediately below the mouth of the branch mentioned.*" * * * " The last line but one goes to a red oak by the river side, and thence up the river to the beginning. These *termini*, independent of the calls for the branch on the first and second lines, clearly fix the beginning of the survey on the river, and consequently by the admission of the plaintiff himself, the survey made from that point would not include the land claimed by the defendant."

But we put our decision upon the ground that it is competent, by proper and sufficient testimony, to ascertain the position of the starting point of the survey on the river and below the bridge, and this is not prohibited by the absence of a call for any natural object at that point, nor by any indefiniteness in the description contained in the grant.

As this disposes of the appeal, and the same exceptions may not be presented on another trial, it is unnecessary to consider the others. There is error, and a *venire de novo* is awarded. Let this be certified.

Error.                                    *Venire de novo.*